UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**FILED**
OCT 2 6 2006
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | Criminal No. 06-263 |
| v. | : | VIOLATIONS: |
| | : | |
| | : | 18 U.S.C. § 371 (Conspiracy); |
| JEFFREY A. HAYDEN, | : | 18 U.S.C. § 2 (Aiding and Abetting) |
| | : | |
| Defendant. | : | |

### STATEMENT OF THE OFFENSE

Pursuant to Fed.R.Cr.P. 11, defendant JEFFREY A. HAYDEN agrees and stipulates as follows:

1. Marc Duchesne was a citizen of the United Kingdom and resided in Houston, Texas.

2. Nationwide Capital Corporation ("Nationwide") was a Nevada corporation with offices in Houston, Texas which had de minimus assets and revenues and virtually no business operations. In July 2002, Nationwide merged with Calwest Ventures Inc. ("Calwest"), a publicly traded "shell" company which also had no significant assets, income or business. The merger of Nationwide and Calwest occurred after Duchesne and others had purchased virtually all of the outstanding shares of Calwest. At the conclusion of the merger, the surviving entity was Nationwide Capital Corporation.

3. After the merger, Nationwide became a publicly traded company under the symbol "NCCN." Nationwide had common stock registered with the United States Securities and Exchange Commission ("SEC") under the Securities Act of 1933, and from on or about August 16, 2002, through on or about October 1, 2002, the common stock of Nationwide traded

on the electronic bulletin board system (the "OTC Bulletin Board") maintained by the National Association of Securities Dealers (the "NASD"). Nationwide was required by law to file with the SEC truthful statements regarding its business affairs, including periodic reports on its financial condition and operations. On October 1, 2002, the SEC suspended trading in Nationwide securities until October 15, 2002, citing questions about statements made by Nationwide concerning its business operations, business relationships, financial condition and its acquisition of another company.

4. JEFFREY A. HAYDEN, the defendant, was a resident of Chattanooga, Tennessee, and was the controlling principal of Nine Trees Corporation, a Nevada corporation. Defendant HAYDEN introduced Duchesne and others at Nationwide to the principals of Calwest.

5. S.S. was retained by defendant HAYDEN to serve as the nominee president of Nine Trees Corporation, and exercised no control over Nine Trees Corporation.

6. G.M. was a resident of Houston, Texas and was the President and Chief Executive Officer of Nationwide.

7. J.M., a resident of Houston, Texas, was the President of the "Financial Services Division" of Nationwide.

8. The SEC was an agency of the United States located at 450 5th Street, N.W., Washington, D.C. and was responsible for protecting investors and maintaining the integrity of the securities markets. As such, the SEC had regulatory and civil enforcement authority over companies such as Nationwide, whose securities were traded on the OTC Bulletin Board, as well as the officers, directors, and employees of such companies, such as G.M. and J.M.

9.  After Nationwide common shares began trading on August 16, 2002, and with the assistance of others, Duchesne devised several schemes to manipulate Nationwide's stock price.

10. As described below, Duchesne, defendant HAYDEN and others conspired to and did manipulate Nationwide's stock price by, among other things: (1) coordinating several prearranged trades and "matched orders" (that is, securities purchases or sales entered with the knowledge that a reciprocal order of substantially the same amount would be entered at substantially the same time for substantially the same price) that were designed to create a false and misleading appearance of an active and rising market in Nationwide stock and to induce others to purchase shares, and (2) manipulating the price of Nationwide stock by arranging for the placement of inflated late-day orders to raise the reported closing price of the stock (also known as "marking the close").

### Matched Orders and Prearranged Trades

11. On or about August 16, 2002, Nationwide common stock began to publicly trade on the OTC Bulletin Board under the ticker symbol "NCCN."

12. On or about August 16, 2002, Duchesne and defendant HAYDEN discussed by telephone a plan to have HAYDEN post an offer to sell 500 Nationwide shares at $9.35 per share, each well knowing said price in no way reflected the value of Nationwide common shares.

13. On or about August 16, 2002, defendant HAYDEN telephoned his broker and caused the broker to post a bid to sell 500 Nationwide shares at $9.35 per share.

14. On or about August 16, 2002, Duchesne posted a matching bid to purchase 500 Nationwide shares at a price of $9.35 per share.

15. On or about August 27, 2002, Duchesne asked defendant HAYDEN over the

3

telephone to buy 5,000 Nationwide shares at the price that Duchesne was offering those shares on the OTC Bulletin Board.

16. On or about August 27, 2002, defendant HAYDEN telephoned his broker and caused him to buy 4,500 Nationwide shares at prices ranging from $9.05 to $9.25.

17. On or about August 27, 2002, Duchesne coordinated prearranged market trades between defendant HAYDEN and others in which HAYDEN sold 6,900 Nationwide shares at prices ranging from about $4.75 to $9.

### Marking the Close

18. On or about August 27, 2002, Duchesne instructed defendant HAYDEN by telephone to buy Nationwide stock at an inflated price near the end of the trading day.

19. On or about August 27, 2002, at or about 3:54 p.m., HAYDEN telephoned his broker and caused him to purchase 100 Nationwide shares at $9.25 per share.

### The SEC's Investigation

20. The SEC is responsible for enforcing the federal securities laws, including the Securities Exchange Act of 1934, 15 U.S.C. § 78, *et seq.*

21. Beginning in or about 2002, the SEC commenced a proceeding and directed its staff to investigate whether Nationwide and others, directly or indirectly, in connection with the offer, purchase or sale of securities: (i) may have employed, or was employing, devices, schemes, or artifices to defraud; (ii) may have made, or was making, untrue statements of material facts; or may have omitted, or was omitting, to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, and may have obtained, or was obtaining, money or property by means of such statements or

omissions; or (iii) may have engaged in, or was engaging in acts, transactions, practices, or courses of business which operated or would operate as a fraud or deceit upon purchasers or other persons through, among other things, company press releases, statements on the Internet web site, and other public statements concerning, among other things: (a) the company's business operations, (b) the company's business relationships, (c) the company's current financial condition, (d) the company's acquisition of YCO, a privately held company, and (e) trading in the company's common stock by related shareholders.

22. As its investigation progressed, it was material to the SEC to determine, among other things: (1) whether defendant HAYDEN was the beneficial owner of Nine Trees Corporation; (2) whether defendant HAYDEN controlled Nine Trees Corporation; (3) what role, if any, S.S. played in the operation of Nine Trees Corporation; (4) why HAYDEN purchased and sold Nationwide stock in August 2002; (4) whether Duchesne or any other person had asked defendant HAYDEN to purchase stock at a particular price; and (5), whether Duchesne, defendant HAYDEN and others had attempted to artificially increase the price of Nationwide common stock by prearranging trades of Nationwide stock by and between Duchesne and defendant HAYDEN.

23. On or about September 5, 2002, in the District of Columbia and elsewhere, the defendant, JEFFREY A. HAYDEN, made false and misleading statements to the SEC during an investigative interview that the SEC conducted by telephone from the District of Columbia. Specifically, defendant HAYDEN falsely told the SEC that he performed trades in a brokerage account in the name of Nine Trees Corporation at the direction of and on behalf of S.S., the purported beneficial owner of Nine Trees. In fact, defendant HAYDEN actually controlled Nine

Trees Corporation, and S.S. was merely the nominee president of that company. Moreover, defendant HAYDEN falsely claimed that all of the trades he made in Nationwide common stock were based on market trends and market analysis when in fact defendant HAYDEN bought and sold Nationwide stock in coordination with Duchesne in an effort to artificially boost the stock price, not based on any real analysis or interest in the company's stock.

        Respectfully submitted,

        KENNETH L. WAINSTEIN
        United States Attorney
        for the District of Columbia

By: _____
        DAVID CAREY WOLL, JR.
        Assistant U.S. Attorney
        555 4th Street, N.W.
        Washington, D.C. 20530
        (202) 514-4250

## DEFENDANT'S ACCEPTANCE

I have read every word of this Statement of Offense. Pursuant to Fed. R. Cr. P. 11, after consulting with my attorney, I agree and stipulate to this Statement of Offense.

Date: 10/26/2006

Jeffrey A. Hayden
Defendant

I have discussed this Statement of Offense with my client, Mr. Hayden. I concur with his decision to stipulate to this Statement of Offense.

Date: 10-26-06

Allen H. Orenberg, Esquire
Attorney for Jeffrey A. Hayden